# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 18, 2017

Plaintiff-Appellee,

v

No. 331538
Wayne Circuit Court
LC No. 15-004977-01-FC

LARRY ANTHONY PRICE,

Defendant-Appellant.

Before: MURPHY, P.J., and TALBOT, C.J., and O'CONNELL, J.

PER CURIAM.

Defendant, Larry Anthony Price, appeals by right his convictions, following a jury trial, of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm (felon in possession), MCL 750.224f, assault with intent to do great bodily harm less than murder, MCL 750.84, and use of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Price as a third-offense habitual offender, MCL 769.11, to serve concurrent terms of imprisonment of life without parole for his first-degree murder conviction, four years and six months to 10 years for his felon in possession conviction, and nine years and six months to 20 years for his assault conviction, as well as a consecutive term of two years' imprisonment for his felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

Price's convictions resulted from the shooting of Andre Johnson that occurred after a car chase on the evening of January 29, 2015. According to Brandon Burrell, he, Christopher Willis, and Johnson were together most of the evening. Johnson had previously had a relationship with Price's girlfriend, who Burrell encountered while celebrating a birthday. After Price's girlfriend left the celebration, Burrell's group left. Later, Johnson drew Burrell's attention to Price's vehicle, a red Chrysler 300C, that was parked down the street. According to Burrell, the dome light was on inside the car and he could see that Price was driving. After Burrell's group got into Burrell's car and started driving away, Price's car began following them. A brief car chase ensued. When both cars pulled over and stopped, Burrell saw sparks coming from Price's car, specifically from the driver's seat, that were caused by two people firing guns at Burrell's vehicle from inside Price's car. Burrell assumed Price was firing one of the weapons because there would not have been time for Price to change seats. Johnson was killed.

## II. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Price argues that the evidence was insufficient to support his verdict and that his verdict was against the great weight of the evidence because no one identified him as a shooter. We disagree.

A defendant need not take any steps to preserve a sufficiency of the evidence challenge. *People v Cain*, 238 Mich App 95, 116-117; 605 NW2d 28 (1999). A claim that the evidence was insufficient to convict a defendant implicates the defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748, amended on other grounds 441 Mich 1201 (1992). We review de novo a defendant's challenge to the sufficiency of the evidence supporting his conviction. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. *Id.* at 9.

However, Price did not preserve his argument concerning the great weight of the evidence because he did not move for a new trial on the basis of the weight of the evidence. See *People v Cameron*, 291 Mich App 599, 616-617; 806 NW2d 371 (2011). Because Price failed to preserve this claim, we will review this issue for plain error affecting his substantial rights. *Id.*; *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Concerning the great weight of the evidence, the presence of conflicting testimony alone does not provide a sufficient ground to discard a verdict. *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). Courts defer to the trier of fact's credibility determination unless "directly contradictory testimony was so far impeached that it was deprived of all probative value or that the [trier of fact] could not believe it," the determination "contradicted indisputable physical facts," or the determination "defied physical realities." *Id.* at 645-646 (quotations and citation omitted). Similarly, when considering the sufficiency of the evidence, we will not interfere with the trier of fact's role to determine the weight of the evidence or the credibility of the witnesses. *Wolfe*, 440 Mich at 514-515. More particularly, assessing "[t]he credibility of identification testimony is a question for the trier of fact." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).

"[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Positive identification by a witness may provide sufficient evidence of identity, even in cases of conflicting identification testimony. *Davis*, 241 Mich App at 699-700.

In this case, Burrell testified that as he was leaving a friend's house, he saw Price's car parked down the road and saw Price inside the car because the car's interior dome light was on. Detroit Police Department Detective Ryan Mason testified that when he interviewed Burrell, Burrell did not mention a dome light being on inside the car. Similarly, Detroit Police Department Detective Matthew Van Raaphorst testified that he did not remember hearing about a dome light being on during his first interview with Burrell.

Although Burrell's trial testimony was impeached by Detectives Mason and Van Raaphorst, his testimony was not inherently contradictory, did not contradict indisputable physical facts, and did not defy physical realities. The trier of fact was entitled to weigh Burrell's testimony that he saw Price in the car when reaching its conclusion about the shooters'

identities, and Burrell's testimony was not so thoroughly impeached that it had no probative value. Therefore, we conclude that sufficient evidence supported Price's convictions and that his convictions were not against the great weight of the evidence.

## III. JURY SEVERANCE

Price initially argues that jury severance was mandated because he and his codefendant, Dontaye Javon Brown, had antagonistic defenses. However, when asked by the trial court, "There were no statements made or anything that would necessitate two juries?" defense counsel responded no, thereby waiving any argument on appeal about severance. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

Price also argues that his counsel was ineffective for failing to argue that jury severance was appropriate. We disagree.

Generally, a defendant's ineffective assistance of counsel claim "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review for clear error the trial court's findings of fact and review de novo questions of law. *Id*. However, when no hearing was held, as in this case, our review is limited to mistakes apparent from the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To prove that defense counsel was ineffective, a defendant must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The defendant must overcome the strong presumption that counsel's performance constituted sound trial strategy. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). A defendant must also show that there is a reasonable probability that counsel's deficient performance prejudiced him. *Strickland*, 466 US at 691-692.

"An information or indictment may charge two or more defendants with the same offense" if "the offenses are related . . . ." MCR 6.121(A)(2). However, on a defendant's motion, the trial court "must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant." MCR 6.121(C). Severance is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994) (quotations and citation omitted). Inconsistent defenses alone do not mandate severance. *Id*. at 349. Rather, the defenses must be mutually exclusive or irreconcilable to the extent that the jury could only believe one defendant at the expense of the other. *Id*. at 350.

In this case, Price and Brown's defenses were not mutually exclusive. Both argued that they were not present at the crime. Accordingly, their defenses were not irreconcilable, and defense counsel did not act unreasonably by failing to raise a meritless request for severance. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Additionally, neither defendant gave a statement to police or testified at trial, so any prejudice to Price from being tried with Brown was incidental. Thus, Price cannot show a reasonable probability that counsel's failure to request separate trials prejudiced him. See *Strickland*, 466 US at 691-692.

## IV. PROSECUTORIAL MISCONDUCT

Price finally argues that the prosecutor committed multiple incidents of misconduct and that the misconduct deprived him of a fair trial. We disagree.

Price preserved some claims of misconduct, but not others, as noted below. We review preserved claims of prosecutorial misconduct de novo and review unpreserved claims of prosecutorial misconduct for plain error. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

A prosecutor can deny a defendant's right to a fair trial by making improper remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). But standing alone, prosecutorial misconduct is not constitutional error. See *People v Blackmon*, 280 Mich App 253, 269; 761 NW2d 172 (2008). "[I]n order for prosecutorial misconduct to be constitutional error, the misconduct must have so infected the trial with unfairness as to make the conviction a deprivation of liberty without due process of law." *Id*. (emphasis omitted).

First, Price argues that the prosecutor committed misconduct by asking Willis if he had ever heard of threats against Johnson's life because the question elicited hearsay. Price's argument is "essentially an evidentiary issue framed as prosecutorial misconduct," and as such we consider whether the prosecutor acted in good faith. See *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Id*. at 70.

After Willis testified that he never heard Price threaten Johnson's life, the prosecutor sought to impeach Willis with a prior statement that Johnson and Price had drawn weapons on each other. The trial court ruled that drawing weapons could be taken as a threat and allowed the prosecutor to impeach Willis with the prior statement. Contradictory prior statements may be used to impeach a witness, but are not generally admissible. See MRE 613(b). This statement was also not hearsay because the prosecutor did not ask Willis about his prior statement to prove the matter asserted—that Price had drawn a gun on Johnson—but rather to show that Willis had given a different statement on a prior occasion. MRE 801(c). We conclude that the prosecutor did not commit misconduct by seeking in good faith to impeach Willis with a prior statement that contradicted his trial testimony.

Second, Price argues that the prosecutor committed misconduct by implying that Price's ex-girlfriend gave different information in a police interview and at trial about the time when she, Price, and Brown arrived at her home. This claim is unpreserved. At trial, Price's ex-girlfriend testified the three arrived at her home "around ten-ish or something" and further stated that she previously had been forced to give an exact time but could not state what time it was. The prosecutor moved to play a video of a police interview of her for the jury. The trial court ruled it would allow the prosecutor to play a three or four second clip in which the witness spoke of the time in issue. In response to further objection by defense counsel, the trial court noted that the video showed that no one had forced Price's ex-girlfriend to state any time. However, after returning to the stand, Price's ex-girlfriend testified to a different time that was consistent with her police interview. She also testified that no one forced her to identify a specific time. Again, we conclude that the prosecutor's good-faith attempt to impeach a witness with a prior

inconsistent statement did not constitute prosecutorial misconduct. See *Dobek*, 274 Mich App at 70.

Third, Price challenges the prosecutor's use of leading questions during the ex-girlfriend's redirect examination. "[R]eversal is not required simply because leading questions were asked during trial." *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). The defendant must show some prejudice from the use of leading questions. *Id*. In this case, Price neither argues that the use of leading questions prejudiced him, nor is there any indication that it actually did so.

Fourth, Price argues that the prosecutor attempted to influence the jury with extraneous influences by repeatedly speaking loudly enough for the jury to hear her during bench conferences and once at her counsel table. During deliberations, the jury may only consider evidence presented to them in open court. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). When the jury considers outside influences, it may affect the defendant's right to a fair trial. *Id*. A prosecutor commits misconduct by abandoning his or her responsibility to seek justice and denying the defendant a fair and impartial trial. *Dobek*, 274 Mich App at 63.

There were a total of four instances in which the trial court either asked the prosecutor to keep her voice down or defense counsel objected on the basis that the prosecutor was speaking too loudly. The prosecutor's conduct in repeatedly speaking loudly, despite being warned not to do so by the trial court, constitutes misconduct.

However, in order to establish error predicated on an extraneous influence, the defendant must "prove that the jury was exposed to extraneous influences" and "that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict." *Budzyn*, 456 Mich at 88-89. To do so, the defendant generally must demonstrate that the extraneous influence was "substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Id*.

Price has not established that this conduct affected the outcome of his trial. The record contains no indication that the jury heard or was influenced by any of the prosecutor's extraneous comments. Price failed to establish that the influences were related to material aspects of the case. In the instance in which the prosecutor was speaking with her officer in charge at the counsel table, the topic was unknown. The other instances concerned matters of impeachment of witnesses on matters that were either ruled admissible or were covered on the record. Price has thus failed to demonstrate a direct connection between the extrinsic influences and the verdict and has not met his burden to establish that the prosecutor's conduct was more probably than not outcome determinative. See *Blackmon*, 280 Mich App at 270.

Fifth, Price argues that the prosecutor's closing argument failed to confine itself to the facts in evidence. This claim is unpreserved. A prosecutor may not argue the effect of testimony that was not in evidence. *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994). However, a prosecutor may argue all of the facts in evidence and all reasonable inferences arising from the facts as they relate to the prosecution's theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995).

Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent Jason Salerno testified that he has a canine partner named Jax that was trained to detect explosive compounds, including compounds in nitrate-based smokeless powders for guns. The prosecutor argued in closing, that Burrell "had no idea that Agent Solerno and Jackson [sic] were to find some explosive compounds in that red 300." Accordingly, the prosecutor's closing argument was based on the facts in evidence, and we reject Price's assertion of misconduct.

Finally, Price argues that the cumulative effect of misconduct denied him a fair trial. However, because only one allegation of prosecutorial misconduct had merit, and Price has failed to establish the requisite prejudice with respect to the action, Price has not shown he was deprived of a fair trial. See *Dobek*, 274 Mich App at 106.

We affirm.

/s/ William B. Murphy
/s/ Michael J. Talbot
/s/ Peter D. O'Connell